IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

Civil Action No. 1:20-CV-41

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, subscribing to Certificate No. 492252,<br><br>    Plaintiffs,<br><br>v.<br><br>MEDICAL FUSION, LLC, a North Carolina limited liability company; SUPERIOR HEALTHCARE PHYSICAL MEDICINE OF HENDERSONVILLE, PC, a dissolved North Carolina professional corporation; JEFFREY G. HEDGES, D.C.; and ANDREW WELLS, D.C.;<br><br>    Defendants. | **COMPLAINT FOR DECLARATORY RELIEF** |

  NOW COMES Those Certain Underwriters at Lloyd's, London, subscribing to Certificate No. 492252, by and through undersigned counsel, complaining of Medical Fusion, LLC, Superior Healthcare Physical Medicine of Hendersonville, PC, Jeffrey G. Hedges, D.C., and Andrew Wells, D.C., and aver and allege as follows:

### NATURE OF THE ACTION

1.  In this action, Those Certain Underwriters at Lloyd's, London, subscribing to Certificate No. 492252 ("Plaintiffs" or "Underwriters") seek a declaration from this Court pursuant to 28 U.S.C. § 2201 *et seq.*, of the rights and obligations of the parties to the Certificate ("the Policy"), and those claiming benefits from the Policy.

2.  Specifically, Underwriters seek a declaration from this Court that there is no coverage under the Policy for defense or indemnity or, in the alternative, that Underwriters have the right to (a) rescind the Policy based on material and fraudulent misrepresentations made by the applicant; and/or (b) this Court should declare this Policy forfeited by the Insureds pursuant to the Forfeiture

Clause of the Policy; and/or (c) this Court should declare the Policy null and void *ab initio* based on breach of the Warranty Clause.

## PARTIES

3. Underwriters are comprised of unincorporated associations of companies—*i.e.*, syndicates—authorized to underwrite insurance at Lloyd's London. All of the syndicates subscribing to the insurance certificate at issue in this action are incorporated under the laws of England and Wales in the United Kingdom of Great Britain and Northern Ireland, and have their principal place of business in London, England, and have as members solely corporate entities.

4. Defendant Jeffrey G. Hedges ("Dr. Hedges") is a licensed or formerly licensed chiropractor in the State of North Carolina, and has been since on or around 28 July 2012. Upon information and belief, Dr. Hedges is a resident of Buncombe County, North Carolina.

5. Defendant Andrew Wells ("Dr. Wells") is a licensed or formerly licensed chiropractor in North Carolina, and has been since on or around 23 April 2011. Upon information and belief, Dr. Wells is a resident of Buncombe County, North Carolina.

6. Defendant Medical Fusion, LLC ("Medical Fusion") is a North Carolina company formed by Dr. Hedges on or about 5 February 2015. Its principal office is located in Henderson County, North Carolina. Upon information and belief, Medical Fusion is, and at all relevant times has been, owned and operated by Dr. Hedges and Dr. Wells, either directly or through *alter ego* entities.

7. Defendant Superior Healthcare Physical Medicine of Hendersonville, PC ("Superior-Hendersonville") was an integrated medical-chiropractic practice located in Henderson County, North Carolina. It was incorporated on or about 10 December 2015, and was operated by Dr. Hedges, Dr. Wells, and Medical Fusion, until its dissolution on or about 18 December 2018.

## JURISDICTIONAL ALLEGATIONS

8. There is complete diversity of citizenship between the parties. The Underwriters are subjects of the United Kingdom of Great Britain and Northern Ireland. None of the Underwriters are residing or domiciled within the United States. Defendants are citizens of the State of North Carolina.

9. Defendants seek coverage under an insurance policy underwritten by the Underwriters for which there is one million dollars ($1,000,000.00) per claim in potential coverage available, and two million dollars ($2,000,000.00) in the aggregate. The Underwriters seek a declaration on the rights of the parties, and those who might seek to be parties, to that policy. Thus, the amount in

controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

10. As such, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and Plaintiff seeks relief under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 *et seq*.

11. Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue in this judicial district is proper because: (1) one or more of the defendants reside therein; and (2) a substantial part of the events and/or omissions giving rise to the claim occurred therein.

## FACTUAL ALLEGATIONS

### *I. The e-MD®/MEDEFENSE® Plus Policy Application*

12. In an application dated 3 December 2016, Superior-Hendersonville, by and through its (nominal) owner, applied for e-MD®/MEDEFENSE® Plus claims-made coverage from Underwriters (the "Application"). A true and accurate copy of the Application is appended hereto as part of **Exhibit 1**, which is the Policy issued by the Underwriters, and incorporated by reference as if fully set forth herein.

13. The Application form expressly states to prospective applicants, *inter alia*: "The particulars, representations and statements contained in this Application and any other information submitted are the basis for the proposed insurance and will be considered as incorporated into, and constituting part of, the proposed certificate and/or policy."

14. In the Application, Superior-Hendersonville represented that twenty to twenty-five percent (20-25%) of its annual projected billings will be attributable to Medicare patients, and that 0% of its annual projected billings will be attributable to Medicaid. *See*, Application, ¶ 7(b)-(c). Superior-Hendersonville goes on to represent that its "Medicare/Medicaid billings" for the current year (*i.e.*, 2016) was six hundred thousand dollars ($600,000.00).

15. As to billing compliance measures, Superior-Hendersonville represented in the Application that (i) it had a billing compliance program in place from its inception (i.e., March 2016); (ii) it utilized 1 credentialed staff to perform billing procedures; (iii) it was using a current edition of the CPT manual; (iv); that it had an attorney and auditor in charge of billing compliance; and (v) that it had billing reviews performed quarterly by a medical doctor. See, Application, ¶¶ 9-15.

16. As to its loss history, Superior-Hendersonville represented in the Application that (i) it or any member of its staff, or any person or entity for whom it performs billing services, had not *"[b]een investigated or sanctioned by any local, state or federal government agency or private (commercial) payer*

regarding the delivery of health care services or reimbursement thereof…"; (ii) had not ***"[b]een… [a]udited or investigated with regard to Medicare/Medicaid billing practices or utilization of Medicare/Medicaid services***"; (iii) ***"[b]een accused of billing errors by any local, state or federal government agency or private (commercial) payer***…"; and (iv) "…had never ***"Been aware of any facts, circumstances, situations, events or incidents that could result in regulatory action, regulatory investigation or demand for restitution."*** *See*, Application, ¶ 25, ¶ 27(a); ¶ 31; ¶ 35. (Emphasis added.)

17. By its representative's signature, Superior-Hendersonville declared, *inter alia*, that "the statements herein are true and correct…" and "[t]he undersigned agrees that in the event this Application contains misrepresentations or fails to state facts materially affecting the risk assumed by the insurer, any insurance issued shall be void in its entirety." *See*, Application, § 5, ¶ 1, ¶ 3.

## II. *The e-MD®/MEDEFENSE® Plus Policy*

18. Based on the representations made by the Named Insured, Superior-Hendersonville in the Application, Underwriters issued the e-MD®/MEDEFENSE® Plus Coverage, Certificate No. 492252 ("the Policy") to Superior-Hendersonville with a policy period commencing on 11 January 2017 and concluding on 11 January 2018. *See*, **Exhibit 1**.

19. Medical Fusion is an Additional Insured on the Policy, subject to the provisions and limitations identified fully in the Policy, and summarized *infra*.

20. Dr. Hedges is not an Additional Insured on the Policy.

21. Dr. Wells is not an Additional Insured on the Policy.

22. On 23 March 2016, Dr. Venus Pitts instituted a *qui tam* action on behalf of the United States of America ("the Government") in the United States District Court for the Eastern District of North Carolina, Western Division (the "U.S. District Court") under caption number 5:16-CV-127-BO, alleging violations of the False Claims Act (31 U.S.C. § 3729, *et seq*.) and other related claims sounding in fraud against: (1) Dr. Hedges, individually as the owner of Adio Management Company, Inc., and as a co-owner of Action Potential Management, LLC; (2) Dr. Wells, individually and as a co-owner of Action Potential Management, LLC; and (3) Zachary D. Scott, D.C., individually and as the owner of WHPH Management, Inc.

23. The Underwriters received notice of the above-identified *qui tam* action on or around 22 September 2017. By letter dated on or around 7 September 2017, NAS Insurance Services—acting on behalf of the Underwriters—reserved the Underwriters' rights under the Policy.

24. On 6 December 2018, the United States of America ex rel. Dr. Venus Pitts ("Government") filed its Complaint in Intervention ("the Intervention Complaint") in the U.S. District Court at Docket Entry No. 48 under caption number 5:16-CV-127-BO, amending the pleadings, but continuing to allege violations of the False Claims Act and other related claims sounding in fraud against Dr. Hedges, Dr. Wells, Zachary D. Scott, Adio Management Company, Inc., Action Potential Management, LLC, WHPH Management, Inc., Medical Fusion, and WH Healthcare.

25. The Intervention Complaint was initially filed under seal, but has been since unsealed by the U.S. District Court. A true and accurate copy of the Intervention Complaint is appended hereto as **Exhibit 2** and incorporated by reference as if fully set forth and realleged herein.

26. By letter dated 14 January 2020, the Underwriters, through their counsel, advised counsel for Superior-Hendersonville, Medical Fusion, Dr. Hedges, and Dr. Wells that they were denying coverage under the Policy based on the allegations contained in the Intervention Complaint. A true and accurate copy of said letter is appended hereto as **Exhibit 3** and incorporated by reference as if fully set forth herein.

27. Notwithstanding the denial of coverage, subject to reservations of rights, Underwriters are continuing to pay defense costs under the Policy pending further developments.

### III. Summary of the Intervention Complaint

28. The Government alleges in the Intervention Complaint that Dr. Hedges, Dr. Wells, and Medical Fusion systematically defrauded Medicare by repeatedly and knowingly causing the submission of false claims and the creation of false statements or records at Superior-Hendersonville. *See, e.g.*, Intervention Complaint, ¶ 279.

29. The Named Insured, Superior-Hendersonville, is not a defendant in the Intervention Complaint.

30. Specifically, the Government alleges that the false claims, statements, and records created and presented for payment by Medical Fusion, Dr. Hedges and/or Dr. Wells included: (1) improper billing under the National Provider Identification ("NPI") numbers of medical practitioners who were rarely on-site; or ***who in certain instances were not even employed by Superior-Hendersonville at times that said services were billed under their NPI numbers***; and (2) improper billing under Modifier -25.[1]

---

[1] The Government describes the billing requirements of Medicare in the Intervention Complaint at ¶¶ 68-92, including the meaning of "Modifier -25" at ¶ 90.

5

31. The Intervention Complaint alleges a longstanding pattern and practice of knowing, intentional Medicare fraud committed by Dr. Hedges, Dr. Wells, and their management companies, one of which is Medical Fusion.

### A. Superior-Durham allegedly committed Medicare fraud.

32. The alleged fraud by Dr. Hedges began at an integrated medical-chiropractic office in Durham, North Carolina, called Superior Healthcare Physical Medicine, PC, ("Superior-Durham"). *See generally*, Intervention Complaint, ¶¶ 99-152, ¶¶ 269-280, ¶¶ 348-517.

33. The Intervention Complaint alleges Dr. Hedges recruited a physician, Dr. Pitts, to "supervise the mid-level practitioners" who would be actually performing procedures at Superior-Durham. *See*, id., ¶ 106.

34. According to the Government, Dr. Hedges executed a physician employment agreement with Dr. Pitts on behalf of Superior-Durham as its president on 28 March 2013. *See*, id., ¶¶ 112-13.

35. Dr. Hedges created a management company, ADIO Management, which also on 28 March 2013, executed a management services agreement with Superior-Durham, with Dr. Pitts then signing on behalf of Superior Durham, and with Dr. Hedges signing on behalf of ADIO Management. *See*, id., ¶¶ 120-21.

36. As a result of that agreement, according to the Intervention Complaint, Dr. Hedges' management company (ADIO Management) gained exclusive rights to and responsibility to provide "billing and collection services for all fees payable with respect to Superior-Durham's provision of professional medical services, equipment, devices, and supplies to Patients of the Practice." *See*, id., ¶ 121.

37. The Government alleges that Hedges and ADIO Management seized control of Superior-Durham's billings, including its billing of claims to Medicare. *See*, id., ¶ 123.

38. The Intervention Complaint alleges that "Superior-Durham began seeing patients in July 2013." Id., ¶ 348.

39. The Government also alleges that Hedges "knew that Dr. Pitts was not treating any patients [at Superior-Durham]," Id., ¶ 359. "Nevertheless, medical services provided by mid-level practitioners at Superior-Durham were repeatedly… billed under Dr. Pitts' NPI." Id., ¶ 361.

40. The Government alleges that, "[o]ver the course of Superior-Durham's operation, Hedges… systematically defrauded Medicare by repeatedly and knowingly causing the submission of false claims and the creation of false statements of records at Superior-Durham, and by knowingly failing to repay the ill-gotten Medicare reimbursements." Id., ¶ 349.

41. The Government outlines at ¶ 350 of the Intervention Complaint "[t]he false claims, statements, and records at Superior-Durham" that it alleges were perpetrated by Hedges and his management company as:

    a. "Improper billing for incident-to services…"

    b. "Improper billing for nerve block injections…"

    c. "Improper billing for evaluation and management services…"

    d. "Improper billing under Modifier -25…"

    e. "Improper billing for durable medical equipment…"

42. The fraudulent actions alleged by the Government against Hedges and Wells and their management company, as they pertain to Superior-Durham, occurred prior to the commencement of the Policy Period at bar, 11 January 2017.

    *B.     Superior-Asheville allegedly committed Medicare fraud.*

43. According to the Government, in 2014, Dr. Hedges recruited Dr. Wells to operate a similar practice in Asheville ("Superior-Asheville"). *See*, id., ¶ 156.

44. Action Potential Management was incorporated in North Carolina on or about 20 August 2014, and was owned and operated by Dr. Hedges and/or Dr. Wells. *See*, id., ¶ 12.

45. "Just as Hedges and ADIO Management did with Superior-Durham, Wells and Action Potential Management quickly seized control of Superior-Asheville's billing." Id., ¶ 161. *See generally*, id., ¶¶ 153-203, ¶¶ 518-591.

46. Billing claims to Medicare was among the Superior-Asheville billing services the Government alleges were seized by Wells and Action Potential Management. *See*, id., ¶ 170.

47. The Intervention Complaint alleges that "Superior-Asheville began seeing patients around September 2014." Id., ¶ 518.

48. The Government also alleges that Hedges "knew that Pitts was rarely, if ever, physically present at Superior-Asheville," id., ¶ 527, and that "Wells and Hedges knew that Dr. Pitts was not treating any patients at Superior-Asheville," id., ¶ 528.

49. "Nevertheless, medical services provided by mid-level practitioners at Superior-Asheville were repeatedly… billed under Dr. Pitts' NPI." Id., ¶ 605.

50. The Government alleges that, "[o]ver the course of Superior-Asheville's operation, Hedges… [and] Wells… systematically defrauded Medicare by repeatedly and knowingly causing the submission of false claims and the creation of false statements or records at Superior-Asheville, and by knowingly failing to repay the ill-gotten Medicare reimbursements." Id., ¶ 519.

51. The Government outlines at ¶ 520 of the Intervention Complaint "[t]he false claims, statements, and records at Superior-Asheville" that it alleges were perpetrated by Hedges, Wells, and their management company as:

    a. "Improper billing for incident-to services…"

    b. "Improper billing for evaluation and management services…"

    c. "Improper billing under Modifier -25…"

    d. "Improper billing for trigger point injections…"

52. The fraudulent actions alleged by the Government against Hedges, Wells, and their management company, as it pertains to Superior-Asheville, occurred prior to the commencement of the Policy Period at bar, 11 January 2017.

### C. Superior-North Hills allegedly committed Medicare fraud.

53. The Government alleges that, in 2014, Dr. Hedges also formed a similar practice in Raleigh, North Carolina at a location the Government identifies as "Superior-North Hills." *See generally*, id., ¶¶ 204-268, ¶¶ 592-643.

54. The Government alleges that Dr. Hedges, Dr. Wells, and another individual formed a company called Professional Business Cent$ on or around 2 September 2014 "to provide billing services" to Superior-North Hills. *See*, id., ¶ 253, ¶¶ 258-59.

55. Among the services allegedly provided by Professional Business Cent$ were billing services to Medicare. *See*, id., ¶ 263.

56. The Intervention Complaint alleges that "Superior-North Hills began seeing patients around October 2014." Id., ¶ 592.

57. The Government also alleges that "Hedges… knew that Dr. Pitts was not treating any patients at Superior-North Hills," and that she was "rarely, if ever, physically present at Superior-North Hills." Id., ¶ 601-02. "Nevertheless, medical services provided by mid-level practitioners at Superior-North Hills were repeatedly… billed under Dr. Pitts' NPI." Id., ¶ 605.

58. The Government alleges that "[o]ver the course of Superior-North Hills' operation, Hedges… systematically defrauded Medicare by repeatedly and knowingly causing the submission of false claims and the creation of false

statements or records at Superior-North Hills, and by knowingly failing to repay the ill-gotten Medicare reimbursements." Id., ¶ 593.

59. The Government outlines at ¶ 594 of the Intervention Complaint "[t]he false claims, statements, and records at Superior-North Hills" that it alleges were perpetrated by Hedges:

   a. "Improper billing for incident-to services…"

   b. "Improper billing under Modifier -25…"

60. The fraudulent actions alleged by the Government against Hedges and his management company, as it pertains to Superior-North Hills, occurred prior to the commencement of the Policy Period at bar, 11 January 2017.

### D. Medicare Audits at the "Original Superiors."

61. On or around 1 December 2015, Dr. Hedges allegedly indicated to Dr. Pitts that Superior-Asheville "passed" a third-party audit. *See*, id., ¶ 272. "In reality," the Government maintains, "the third-party audit of Superior-Ashville… resulted in a 36-page report identifying 19 separate items that needed improvement." Id., ¶ 273.

62. On 2 December 2015, "Medicare [allegedly] conducted an on-site audit of Superior-Durham as part of an on-going administrative investigation into the practice's systematic abuse of certain CPT codes [in its billing]." Id., ¶ 273.

63. Thereafter, Medicare also allegedly audited Superior Asheville and Superior-North Hills. *See*, id., ¶ 274.

64. The Intervention Complaint alleges that "[n]early every claim that Medicare reviewed at the Original Superiors [*i.e.*, Superior-Durham, Superior-Asheville, and Superior-North Hills] was deemed improper for one or more reasons." Id., ¶ 275. (Hereinafter, just as in the Intervention Complaint, the term "Original Superiors" will be used to collectively refer to Superior-Durham, Superior-Ashville, and Superior North Hills.)

65. The alleged Medicare audits at the Original Superiors, and the results of each and every one of those audits, were concluded prior to the commencement of the Policy Period at bar, 11 January 2017.

### E. Superior-Hendersonville and Superior-Rehab allegedly commit Medicare fraud.

66. According to the Government, the alleged fraud continued after the December 2015 Medicare audits of the Original Superiors, shifting to Superior Hendersonville and Superior Rehab under the same organizational model. *See generally*, id., ¶¶ 286-347, ¶¶ 644-90.

9

67. According to the Intervention Complaint, in late 2015, Dr. Hedges and Dr. Wells began recruiting a physician, Dr. Zickerman, to serve as medical director for an integrated medical-chiropractic office in Hendersonville, North Carolina—which would eventually become Superior Hendersonville. *See*, id., ¶ 286.

68. The Government alleges that, in late 2015, Superior-Hendersonville entered into a management services agreement with Medical Fusion "to provide billing and collection services for all fees payable to Superior-Hendersonville's provision of medical services…". *See*, id., ¶ 287, ¶ 289. As alleged above, Medical Fusion was yet another management company owned and operated by Dr. Hedges and Dr. Wells.

69. After recruiting Dr. Zickerman to serve as medical director, the Government alleges said physician signed the management services agreement on Superior-Hendersonville's behalf, with Dr. Wells signing on behalf of Medical Fusion. *See*, id., ¶ 288.

70. According to the Government, "Hedges and Wells also recruited Dr. Zickerman to serve as the medical director of a new integrated medical-chiropractic practice in Asheville, North Carolina," which is identified in the Intervention Complaint as Superior-Hendersonville. *See*, id., ¶ 314.

71. The Government alleges that "following their practice with the Original Superiors, Hedges and Wells, along with their management company, quickly seized control of Superior-Hendersonville's billing," in late 2015. Id., ¶¶ 286-287.

72. The Government alleges that the entity used by Hedges and Wells to seize control of Superior-Hendersonville's billing, including its billing of claims to Medicare, was Medical Fusion. *See*, id., ¶ 287, ¶ 291.

73. The Intervention Complaint alleges that "Superior-Hendersonville and Superior-Rehab began seeing patients around early- to mid-2016." Id., ¶ 644.

74. The Government alleges that "Hedges, Wells, WH Healthcare, and Medical Fusion knew that Dr. Zickerman was rarely, if ever, physically present at Superior-Rehab and Superior-Hendersonville," and that he was not "treating any patients at Superior-Rehab and Superior Hendersonville." Id., ¶¶ 653-54. "Nevertheless, medical services provided by mid-level practitioners at Superior-Rehab and Superior-Hendersonville were repeatedly billed to Medicare under Dr. Zickerman's NPI." Id., ¶ 656.

75. According to the Government, this conduct continued "<u>after</u> Dr. Zickerman resigned from Superior-Hendersonville and Superior-Rehab…" Id., ¶ 657. In other words, Medical Fusion continued to submit billings on behalf of

> *Superior-Hendersonville under Dr. Zickerman's NPI even when he was no longer affiliated with Superior Hendersonville.*

76. The Government alleges that, "[d]espite third-party audit reports, legal advice, guidance from billing personnel, Medicare investigations of the Original Superiors, and a change of medical practitioners and billing personnel, the endemic false billing that plagued the Durham, Asheville, and North Hills practices continued largely unabated at Superior-Hendersonville and Superior-Rehab." Id., ¶ 645.

77. The Government further alleges that "[o]ver the course of Superior-Hendersonville's and Superior-Rehab's operation, Hedges, Wells, Medical Fusion, and WH Healthcare systematically defrauded Medicare by repeatedly and knowingly causing the submission of false claims and the creation of false statements or records at Superior-Hendersonville and Superior-Rehab, and by knowingly failing to repay the ill-gotten Medicare reimbursements." Id., ¶ 646.

78. The Government outlines at ¶ 647 of the Intervention Complaint "[t]he false claims, statements, and records at Superior-Hendersonville and Superior-Rehab" that it alleges were perpetrated by Hedges, Wells, and Medical Fusion:

    a. "Improper billing under the NPI of medical practitioners who were no longer employed by the practices (including improper billing for incident-to services)…and"

    b. "Improper billing under Modifier -25…"

79. The Government charges that "Hedges, Wells, WH Healthcare, and Medical Fusion knowingly caused Superior-Hendersonville and Superior-Rehab to improperly bill Medicare under Dr. Zickerman's NPI." Id., ¶ 658.

80. The fraudulent actions alleged by the Government against Hedges, Wells, WH Healthcare, and Medical Fusion as it pertains to Superior-Hendersonville and Superior-Rehab, occurred prior to the commencement of the Policy Period at bar, on 11 January 2017.

81. Superior-Hendersonville is not named as a defendant in the Intervention Complaint, and there is no relief sought against Superior-Hendersonville.

### FIRST CLAIM FOR RELIEF
*28 U.S.C. § 2201 et seq.*—Declaratory Judgment
**(Declination of Coverage)**

82. The previous allegations are realleged and incorporated as if fully set forth herein.

83. Underwriters seek relief pursuant to 28 U.S.C. § 2201 *et seq.*

84. An actual case or controversy exists between the parties concerning the respective rights of the parties to the Policy, and those who seek coverage under the Policy.

85. Underwriters are parties to, and thus persons interested in, the construction of the provisions of the Policy. Underwriters have joined all known interested parties.

86. Underwriters are entitled to a declaration from this Honorable Court that the factual allegations contained in the Intervention Complaint do not trigger a duty to defend or indemnify the Defendants under the Policy, or otherwise trigger any coverage thereunder.

### *I. Medical Fusion, Dr. Hedges, and Dr. Wells are Not Insureds*

87. Section 6 of the Policy provides the following definition of an "Insured":

    **6. Who is Insured**

    a. The **Named Insured**;

    b. Any **Subsidiary** of the **Named Insured**, but only with respect to **wrongful acts** or **first party insured events** that occur while a **Subsidiary** is owned by the **Named Insured**;

    c. Any past, present, or future **executive**, trustee, physician or **employee** of the **Named Insured** or **Subsidiary**, but only while acting solely within the scope of his or her duties as such;

    d. In the event that the **Named Insured** or **Subsidiary** is a partnership, limited liability partnership, or limited liability company, then any general or managing partner, principal, stockholder, or owner thereof, but only while acting solely within the scope of his or her duties as such;

    e. Any agent or independent contractor of the **Named Insured** or **Subsidiary**, but only while acting on behalf of, at the direction of, and under the supervision of the **Named Insured** or **Subsidiary**; and

    f. Any person or legal entity the **Named Insured** is required by written contract to provide such coverage as is afforded by this Policy, but only for the acts of a party described in paragraph a, b. or c. above, and only if the written contract is executed prior to the date any **wrongful act** or **first party insured event** occurs.

88. Section 6 is modified by Endorsement No. 3 of the Policy, which provides:

    In consideration of the premium charged, and subject to the Retroactive Date(s) indicated below, it is hereby understood and agreed that Section **6. Who is Insured** of [the] Policy is amended to include the person(s) or organization(s) named in the following Schedule of Additional Insureds, but only while acting solely on behalf of, or at the direction of, the **Named Insured**.

| Schedule of Additional Insureds | Retroactive Date |
| --- | --- |
| 1. Medical Fusion | None. Unknown prior acts are covered. |

[Emphasis in underscore added.]

89. At all times alleged in the Intervention Complaint, Medical Fusion, Dr. Hedges, and Dr. Wells were acting at their own direction, and/or on their own behalf, and in their own self-interest.

90. The Named Insured, Superior-Hendersonville, is not even named as a defendant in the Intervention Complaint.

91. Moreover, the Government's Intervention Complaint sets forth allegations in great detail that Superior-Hendersonville was nothing more than a front for Dr. Hedges and Dr. Wells to profit off their alleged Medicare fraud.

92. The Government alleges that Medical Fusion effectively controlled and owned Superior-Hendersonville and Dr. Hedges and Dr. Wells controlled and owned Medical Fusion.

93. Accordingly, the relationship between Superior-Hendersonville and Dr. Hedges, Dr. Wells, and Medical Fusion is the inverse of what the Policy contemplates for Medical Fusion to be qualified as an "Insured" or "Additional Insured" —*i.e.*, Dr. Hedges. Dr. Wells, and Medical Fusion were not acting ". . . solely on behalf of, or at the direction of the **Named Insured**" (Superior-Hendersonville); instead, the Government alleges that Superior-Hendersonville was being operated "on behalf of" and "at the direction of" Dr. Hedges, Dr. Wells, and/or Medical Fusion.

94. Based on the allegations of the Intervention Complaint, Dr. Hedges, Dr. Wells, and Medical Fusion therefore do not meet the definition of an "Insured" under the Policy or an "Additional Insured" under Endorsement No. 3 of the Policy.

### *II.  There Is No Coverage for Medical Fusion, Dr. Hedges, and Dr. Wells, Even If they Were Considered to be Insureds under the Policy, Because They Had Prior Knowledge of the Alleged Wrongful Acts*

95. In the alternative, the Defendants are not entitled to coverage under the Policy pursuant to Exclusion 2 of the Policy, which states:

> **8.    Exclusions**
>
> The Underwriters will not be liable for any **claim**:
>
> \*\*\*

2. Based upon, arising from, or in any way involving an actual or alleged **wrongful act** or **first party insured event** of which any **Insured** had knowledge prior to the effective date of this Policy or prior to the effective date of a Policy issued by the Underwriters of which this Policy is a renewal.

96. A "Wrongful Act" is defined, in relevant part, as follows:

**Wrongful act** means:

\*\*\*

5. With respect to Named Coverage X, a) a **billing error**; or b) a wrongful act, error or omission that gives rise to an **EMTALA proceeding**, **Stark proceeding** or **HIPAA proceeding**.

97. The Policy provides the following definition of a "billing error":

**Billing error** means the actual or alleged presenting of, or causing or allowing to be presented, any erroneous billings by an **Insured** to a government health benefit payer or program or **commercial health insurance payer**, from which **you** seek and/or have received payment or reimbursement for medical services, items or products provided or prescribed by an **Insured** on **your** behalf.

98. As summarized *supra* and as fully set forth in the Intervention Complaint, the Government alleges that Dr. Hedges and Dr. Wells had a long-standing pattern and practice of systematically defrauding Medicare by repeatedly and knowingly causing the submission of false claims and the creation of false statements or records at the Original Superiors, Superior-Hendersonville, and Superior-Rehab.

99. According to the Government, Dr. Hedges' and Dr. Wells' scheme was perpetuated by arranging for their various management companies to "seize" control of the billing services of the Original Superiors, Superior-Hendersonville, and Superior-Rehab, including their Medicare billing services.

100. Based on the factual allegations of the Intervention Complaint, as of the date the Policy Period commenced, Dr. Hedges and Dr. Wells, through Medical Fusion and WH Healthcare, were knowingly causing the submission of false claims and the creation of false statements or records at Superior-Hendersonville and Superior-Rehab.

101. Dr. Hedges and Dr. Wells were the members/owners of Medical Fusion and had control of Medical Fusion. Thus their knowledge is imputed to be the knowledge of Medical Fusion.

102. Accordingly, pursuant to Exclusion 2 of the Policy, there is no coverage for Hedges, Wells, or Medical Fusion regarding any of the conduct alleged or relief sought against them in the Intervention Complaint.

14

### III. Medical Fusion, Dr. Hedges, and Dr. Wells' Alleged Conduct was Intentional or Fraudulent

103. Additionally, the Defendants are not entitled to indemnity pursuant to Exclusion 5 for intentional or fraudulent conduct, which states:

    **8. Exclusions**

    The Underwriters will not be liable for any **claim**:

    \*\*\*

    5. Based upon, arising from, or in any way involving any of the following committed by an **Insured**, whether acting alone or in collusion with other persons:

        a. A willful, intentional, deliberate, malicious, fraudulent, dishonest, or criminal act or omission;

        b. Any intentional violation of law;

        c. Any intentional violation of **your privacy policy**; or

        d. The gaining of any profit or advantage to which an **Insured** is not legally entitled.

    This exclusion does not apply to **claim expenses** or the Underwriters' duty to defend any such **claim** until the conduct described in this exclusion has been established by a final adjudication in a judicial, administrative or alternative dispute proceeding, or by an **Insured's** own admission in a proceeding or otherwise. The Underwriters will have the right to recover **claim expenses** incurred in defending any such **claim** from those parties found to have committed the conduct described in this exclusion.

    This exclusion does not apply to any **Insured** that did not commit, participate in, or have knowledge of any conduct described in this exclusion. This exclusion does not bar coverage for **employee** sabotage.

104. The Government does not allege in the Intervention Complaint that the Medicare billing practices of Dr. Hedges, Dr. Wells, and Medical Fusion were accidental in any respect.

105. Rather, the Government charges that Dr. Hedges, Dr. Wells, and Medical Fusion's Medicare billing practices in the name of Superior-Hendersonville were willful, intentional, deliberate, fraudulent, and/or dishonest, acts or omissions, or intentional violations of law.

106. The Government also charges that Dr. Hedges, Dr. Wells and Medical Fusion's billing practice resulted in their gaining of profit or advantage to which they and Superior-Hendersonville were not legally entitled.

107. Accordingly, pursuant to Exclusion 5 of the Policy, there is no indemnity coverage for any of the conduct alleged in the Intervention Complaint, and Underwriters have the right to recover from Dr. Hedges, Dr. Wells and Medical Fusion all **"claim expenses"** incurred by Underwriters in defending this claim.

## SECOND CLAIM FOR RELIEF
### *28 U.S.C. § 2201 et seq.*—Declaratory Judgment
### (Rescission of Policy)

108. The previous allegations are realleged and incorporated as if fully set forth herein.

109. In addition or in the alternative to the First Claim for Relief, Underwriters are entitled to a declaration from this Court that the Policy is rescinded due to the intentional and fraudulent misrepresentations and/or due to material misrepresentations (regardless of intent) made in the Application for the Policy.

110. In addition or in the alternative, Underwriters are entitled to declarations from this court that this Court declares the coverage under this Policy forfeited pursuant to Paragraph 27 of the Policy; or that coverage is null and void under the Policy due to breach of warranty of representations, pursuant to Paragraph 26 of the Policy.

111. On December 3, 2016, the following answers to the following questions were provided in the Application:

**After internal inquiry, have you or any member of your staff, or any person or entity for whom you perform billing services ever:**

25. Been investigated or sanctioned by any local, state or federal government agency or private (commercial) payer regarding the delivery of health care services or reimbursement thereunder?
    Answer: No
***
27. Been:
    a) Audited or investigated with regard to Medicare/Medicaid billing practices or utilization of Medicare/Medicaid services?
    b) Been placed on prepayment review by any local, state, or federal government agency?
    c) Been placed on prepayment review by any private (commercial) payer?
    Answer: No (to all three questions)
***

31. Been accused of billing errors by any local, state or federal government agency or private (commercial) payer?
    Answer: No

\*\*\*

35. Been aware of any facts, circumstances, situations, events or incidents that could result in a regulatory action, regulatory investigation or demand for restitution?
    Answer: No

112. One or more of the foregoing answers to the foregoing questions were materially false.

113. In addition to the language in the Application form pertaining to misrepresentations, the Policy states:

    **26. Warranty by the Named Insured**

    a. By acceptance of this Policy, the **Named Insured** agrees that the statements contained in the **application** and any supplemental materials submitted therewith are their agreements and representations, which are deemed material to the risk assumed by the Underwriters, and that this Policy is issued in reliance upon the truth thereof.

    b. The misrepresentation or non-disclosure of any matter by the **Named Insured** or the **Named Insured's** agent in the application of any supplemental materials submitted to the Underwriters will render the Policy null and void and relieve the Underwriters from all liability under this Policy.

    c. The **application** and any supplemental materials submitted to the Underwriters are deemed incorporated into and made part of this Policy.

111. Wherefore, the Policy should be rendered null and void and the Underwriters should be relieved from all liability under this Policy.

114. The Policy also contains a provision entitled "Forfeiture":

    **27. Forfeiture**

    Any action or failure to act by the **Named Insured** with the intent to defraud the Underwriters, or the material misrepresentation or non-disclosure of any material fact or **claims** by the **Named Insured** in the **application** or in any supplemental materials submitted to the Underwriters, will render this Policy null and void, and all coverage hereunder shall be forfeited.

17
Case 1:20-cv-00041-MR-DCK   Document 1   Filed 02/10/20   Page 17 of 19

115. The misrepresentations and/or non-disclosures in response to questions on the Application were made with in intent to defraud the Underwriters, and/or were material misrepresentations and/or non-disclosures (regardless of intent).

116. Wherefore, this Court should declare the Policy forfeited pursuant to Paragraph 27 of the Policy.

117. Rescission of the Policy is warranted due to the presence of material misrepresentations and/or non-disclosures, and/or rescission is warranted due to intentional and fraudulent misrepresentations and/or non-disclosures in the Application.

**WHEREFORE,** the Underwriters respectfully request the following relief:

1. That the Court enter an order and judgment in favor of the Underwriters, and against the Defendants, declaring that the factual allegations contained in the Intervention Complaint do not trigger a duty to defend or indemnify the Defendants under the Policy, or otherwise trigger any coverage thereunder, as described further *supra*; and/or

2. That the Court enter an order and judgment in favor of the Underwriters, and against the Defendants, declaring that the Policy is rescinded; and/or

3. That the Court enter an order declaring the Policy to be null and void pursuant to Paragraph 26 of the Policy; and/or

4. That the Court declare coverage under the Policy to be forfeited pursuant to Paragraph 27 of the Policy; and/or

5. That the Court enter judgment against Dr. Wells, Dr. Hedges and Medical Fusion finding them jointly and severally liable to pay back to the Underwriters all **claim expenses** paid by Underwriters for the defense of the claims by Dr. Pitts and the Government.

6. That the Court tax the Defendants with the costs and reasonable attorneys' fees required by the Plaintiff to prosecute this action; and/or

7. That the Court enter any other relief the Court deems just and proper.

This, the 10th day of February, 2020.

    s/ Bradley K. Overcash
    Bradley K. Overcash
    N.C. State Bar No.: 36978
    Daniel E. Peterson
    N.C. State Bar No.: 41521
    PARKER POE ADAMS & BERNSTEIN LLP

18
Case 1:20-cv-00041-MR-DCK   Document 1   Filed 02/10/20   Page 18 of 19

Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, N.C. 28202
Telephone: 704-372-9000
Facsimile: 704-335-4450
bradovercash@parkerpoe.com
danielpeterson@parkerpoe.com
*Attorneys for Defendants*